## SUPERIOR COURT.

BURTON G. MORSS, appellant agt. JOSEPH H. JACOBS, respondent.

BURTON G. MORSS, appellant agt. PHILANDER K. SALISBURY, respondent.

In an action of trespass on land, commenced in the supreme court by reason of a plea of *title* interposed in the justice's court, and the supreme court found that the defendant had title to so much of the premises as he pleaded title to; and that the trespasses committed by defendant, for which the court gave plaintiff judgment for $5, were committed on the piece of land to which the defendant *omitted to plead title;* and that as to such trespasses the title was not in issue; and that the defendant did not controvert the plaintiff's title to or possession thereof on the trial:

*Held,* that the plaintiff having failed to recover $50 damages, the *defendant was entitled to costs.* To entitle the plaintiff to costs in such an action, under the Code, the judgment in the supreme court must be for the plaintiff *on the issue presented by the plea of title.*

It is only those issues which are covered by a plea of title, which are intended to go up to the supreme court at all; as to the other issues or causes of action, they should be continued before the justice, on the plaintiff's motion; otherwise, if proceeded with in the supreme court, they have no influence on the question of costs. (*It will be seen that this decision agrees with that in Heath* agt. *Barmour, ante p. 1, and the note made thereto. This case was received after the case of Heath* agt. *Barmour and note were put in print.*)

*Albany General Term, March,* 1867.

PECKHAM, MILLER *and* HOGEBOOM, *Justices.*

The above cases are appeals from judgments rendered on decisions made therein, by Justice MILLER, one of the justices of this court, before whom the causes were tried, without a jury, at the Greene county circuit, held at Catskill, on the 5th day of June, 1865.

Two cases and exceptions are before the court on appeal; but the pleadings in each are identical, and the same principles of law controlled both actions, and the same evidence substantially was given upon the trial of each cause, and both cases were tried together, and the same decision was rendered in each.

The suits were brought to recover damages for alleged injuries upon two different parcels of land—one known in the case as "the 100 acre lot," secondly described in the complaint; and the other, first described in the complaint, being lands adjoining the tavern stand property of John Brandow, deceased.

The actions were originally commenced in justice's court, in June, 1860. A plea of title was interposed by the defendant in each case, and these actions were at once brought in this court, as stated in the case. The actions were tried before Justice HOGEBOOM, without a jury, at the February term of the Greene circuit, 1862. The two cases were tried together.

Judge HOGEBOOM, in deciding the cases, is said to have found: 1st. That the plaintiff had title to the 100 acre lot, and that the defendant Jacobs committed trespasses thereon to the amount of $80. 2d. That the defendant, and those under whom he claimed, had title to that part of the premises included in the complaint, which is first described in the answer, known as the "tavern stand lot," and so far the defendant was justified in the acts done by him thereon. 3d. That the plaintiff had possession of the residue of the premises described in the complaint, to which the defendant did not plead title, and that the defendant committed trespasses thereon to the amount of $5. Judgment was ordered for the plaintiff.

The judge also certified that title to lands came in question on said trial.

Judgment for the plaintiff was perfected on the decision of the justice in each case.

The judge, it is said, also made the same decision in the case against Salisbury, but found that the defendant Salisbury had not trespassed on the 100 acre lot, to the injury of the plaintiff. Also that the "tavern stand lot" did not belong to the plaintiff, and the defendant was justified in his acts thereon; but that the said defendant had committed

trespasses on other parts of the plaintiff's premises, to which he had not plead a title, to the amount of six cents.

The defendants appealed from the judgments entered on the decision of each case to the general term.

The appeals were argued at the December term of this court, 1864, before judges PECKHAM, MILLER and INGALLS, and the judgments in the cases were reversed and a new trial granted, costs to abide the event.

No written opinion was delivered; but the court was unanimous in holding that the learned judge before whom the cases had been tried, erred in finding that the plaintiff had title, and the defendants did not have title, to the one hundred acre lot; and that upon this ground a new trial was ordered.

The cases were brought on again for re-trial at the Greene County June circuit, 1865, before Justice MILLER, supreme court justice, without a jury.

By stipulation, the parties read from the printed cases, the evidence given on the former trial, each to have the right to add to or take therefrom.

The judge, in deciding said actions, found in each case:

1st. That the defendant, and those from he claimed, had title to the one hundred acre lot, and that he had committed no trespasses thereon to the plaintiff's injury; and this plaintiff had not maintained his action thereto.

2d. That the defendant, and those from whom he claimed, had title to that portion of the tavern stand premises set forth in the answer, and that the defendant had maintained his plea of title thereto.

3d. That the plaintiff had possession of the residue of the premises set forth in the complaint, not embraced in defendant's plea of title, and that the defendant had trespassed thereon. That the plaintiff was entitled to recover therefor the sum of $5 against Jacobs and six cents against Salisbury. That as to such lands the title was not put in issue by the defendant, and was not questioned at the trial, and

4th. That the defendant was entitled to recover costs.

The plaintiff excepted to the finding and decision in each case.

Judgment was entered upon the finding and decision in each case, on the 31st day of July, 1865, against the plaintiff for $477.06 costs.

And in favor of the plaintiff against Jacobs for $5 damages.

And against defendant Salisbury for six cents damages.

The plaintiff has appealed from said judgments to this court.

The questions raised on this appeal are substantially the same in each case, and arise upon the same exceptions, rulings and evidence.

The controversy relates to two separate and distinct parcels of land:

1st. A lot of 100 acres, described in the complaint, and to which title was set up in the 3d defense of the answer.

2d. A lot known as the tavern stand, described in a deed from Jacob Haight, sheriff of Greene county, dated May 25th, 1816, and set forth at length, and containing about 60 acres.

As to the 100 acre lot, both parties claim title under John Brandow, who died in 1859.

As to the 60 acres, the defendants claim title under Brandow, and the plaintiff, in hostility to Brandow, under title from Nicholas Elmendorf.

For greater order and convenience, the evidence as to each parcel was given separately at the trial.

The sixty acres were claimed by defendant to have been occupied by John Brandow, from 1815 to the time of his death,

The land was divided into three pieces above the road, while occupied by him, and two south of the road, as shown on the map herewith presented, viz: The middle lot, on which the tavern stood; the westerly lot extending to the

Pratt line; and the easterly lot, extending from the east parcel to the Batavia or Red Kill. The defendant's proof tended to show that the north line of the 60 acres was a straight line from the Pratt wall to the Red Kill, more or less, evidenced by fences, and monuments, and occupation, yet in pleading title thereto in the answer, the defendant did not embrace the whole land to the south of the north line, but started 6 chains and 86 links east from the big rock, thus leaving a small piece not covered by his plea of title.

On the trial the court was requested to confine the plaintiff's evidence of trespasses, within the boundaries of defendant's plea of title. The court refused so to do.

The court, finds that the defendant had title to all of the 60 acres, or to so much thereof as he plead title to. The trespasses committed by defendants, for which the court gave plaintiff judgment in the one case of $5 and in the other of 6 cents, were committed on the piece to which defendant omitted to plead title. And the court finds that as to such trespasses, the title was not in issue; and that the defendant did not controvert the plaintiff's title to or possession thereof on the trial.

The plaintiff failing to recover $50 damages in either case, the court held defendants entitled to costs.

As to the "100 acre lot," both parties claim under John Brandow, deceased. It is conceded that on the 22d day of April, 1839—the date of Morss' pretended title—John Brandow was the owner of the "100 acre lot" and in possession, claiming title. It is also conceded that if the title is not in the plaintiff, it is in the defendants, or those under whom they claimed and acted.

The only evidence of title, given by or relied upon by the plaintiff, is a duplicate agreement, entered into between B. G. Morss & Co. and Brandow, April 22, 1839, and set out in the printed case.

The duplicate first introduced is the one retained by Morss. Both are originals; both without seals,

They differ in a single word only—the word "bark" in Brandow's duplicate, reads "land" in the one retained by Morss. And upon this difference the plaintiff claimed to hold the hundred acre lot.

Such other facts as may be material are sufficiently stated in the opinion of the court.

A. J. PARKER, *for plaintiff, appellant.*
J. B. OLNEY, *for defendant, respondent.*

*By the court,* HOGEBOOM, J. The argument of plaintiff's counsel, so far as it aims to show that, under the agreement between the plaintiff and John Brandow, the plaintiff had title to the 100 acre lot, may be dismissed with the remark that this court on a former occasion decided the contrary way, and the question is *res adjudicata.* Though not present when the decision was made, I am informed by my brethren they were clear and unanimous on this point, and we must regard it as disposed of, so far as this court is concerned.

This conclusion was arrived at on the face of the instruments themselves, and without reference to extrinsic evidence. There was, therefore, no error in excluding evidence offered by the plaintiff to show that the price paid was the full value of the land, bark and timber together, except the hard wood. There was no request on either side to reform the instruments, and the evidence would seem to be admissible (if at all) only on such an issue.

An exception is also taken by the plaintiff to the admission of evidence offered by the defendant, that the latter claimed his north line to be a straight line, and claimed the east and west lots as his; that he had got sixty acres and the bluff thrown in, and these together run up to this straight line on the north side; that he claimed a certain corner, where he directed the fence to be fixed, as his corner, and spoke of a rock on or near the end of Pratt's wall as on the line; and

claimed a certain pile of stones and a big rock as his corner; and claimed to own a certain lot, and to own up to the north fence.

I am inclined to think that, in connection with the facts and circumstances proved in the case, that all this evidence was admissible, either as showing a claim of title to land which the defendant or Brandow held adversely to the plaintiff, or as characterizing the nature, manner and extent of the defendant's possession.

The plaintiff supposes that much of this evidence relates to land of which there is no proof that the defendant or Brandow had actual or partial possession, and especially that there is no evidence that he was in possession of either the east or the west lot; but I think he is mistaken in this particular as a question of fact upon the evidence. The authorities on this subject are familiar. (*Jackson* agt. *Vredenburgh*, 1 *Johns.* 159; *Jackson* agt. *Van Deusen*, 5 *Id.* 144, 157; *Jackson* agt. *Shearman*, 6 *Id.* 21; *Jackson* agt. *McVey*, 15 *Id.* 234; *Burlingame* agt. *Robbins*, 21 *Barb.* 327; 1 *Cow. & Hill's Notes*, 217 to 221.)

The court is supposed to have erred in holding that plaintiff had no right to recover for the trespasses committed upon the 100 acre lot. I do not understand the court to have so held, in regard to any wood or timber which by the agreement belonged to the plaintiff. The bass wood trees, I presume, were held by the court (trying the case without a jury)—and there was evidence to justify such holding—to be *hard* wood. Even if the judge had erred in that particular to the slight extent of the value of a few soft wood trees, the value being ascertained, it would not be ground for a new trial, but for correcting the finding in that particular.

My examination of the case does not enable me to concur with plaintiff's counsel in saying that the judge *clearly* erred in his decision that the title to the triangle was in the defendant, and not in the plaintiff. There is doubtless a conflict of evidence on that point, but the minute and numerous

references in the defendant's points bearing on that question, most of which I have examined in connection with those made on the part of the plaintiff, do not allow us, I think, to say that there was legal error in the conclusion to which the judge arrived on that subject, for which a new trial should be granted. It is not material to consider, in this aspect of the case, whether the defendant, in his plea of title, started his description six chains and eighty-six links further easterly than the true starting point near the Red Kill bridge. Notwithstanding this alleged error, the defendant presented proof tending to show that his title extended much further easterly than the most easterly point designated in the plea of title, and consequently embraced the whole of the triangle. The judge appears to have come to that conclusion, and we cannot say that it was not warranted by the evidence in any such sense as justifies our interference.

And without going at large into a detailed statement of the evidence, but which I have examined, as contained in the case and referred to in the points, I am not prepared to say that in reference to the tavern stand premises the judge erred, as it is claimed by the plaintiff that he did, in holding that the defendants had established title to any of the land except the twenty acres on which the tavern stood. There is much evidence tending to show an actual and an adverse possession by Brandow and those under him of the east and west lots, up to the north line, as claimed by the plaintiff. The south was the well defined line of the turnpike. I have consulted the various references to the testimony contained in the points of the respective counsel, and do not think a new trial ought to be granted on account of the conclusion to which the judge arrived on this point.

But a very serious question remains to be considered, and that is, whether the judge decided right in awarding costs to the defendants respectively in these actions. As this is a part of the judge's finding, and is incorporated as such in the

judgment, the objection to it may be availed of, I think, by exception, and considered on this appeal.

I do not agree with plaintiff's counsel in the conclusion that, if section 304 of the Code covers this case, the plaintiff would nevertheless be entitled to costs, simply for the reason that, in causes of action to which no plea of title was interposed, the plaintiff obtained a verdict for trespasses committed by the defendant.

Subdivision 1 of that section, which provides that costs shall be allowed of course to the plaintiff, upon a recovery in an action, when a claim of title to real property arises on the pleadings, or is certified by the court to have come in question on the trial, does not, I think, apply to actions commenced in a justice's court, but to those originally commenced in this court.

Subdivision 3, I think, is the one which covers this case. It is as follows:

"3. In the actions of which, according to section 54, a court of justice of the peace has no jurisdiction."

Section 54 is as follows:

"But no justice of the peace shall have cognizance of a civil action: 1. In which the people of the state are a party, excepting for penalties not exceeding one hundred dollars; 2. Nor where the title to real property shall come in question, as provided by sections 55 to 62, both inclusive."

Section 61 regulates the recovery of costs. It is as follows:

"If the judgment in the supreme court be for the plaintiff, he shall recover costs; *if it be for the defendant, he shall recover costs, except that upon a verdict he shall pay costs to the plaintiff, unless the judge certify that the title to real property came in question on the trial.*"

Now, although it is literally true, in this case, that the judgment in the supreme court is (*in part*) for the plaintiff, yet I think it is not so within the meaning of this section, which

meaning is, I think, that the judgment must be for the plaintiff *on the issue presented by the plea of title.*

Indeed, it seems to me that it is only those issues which are covered by a plea of title which are intended to go up to the supreme court at all; for by section 62, "If, in an action before a justice, the plaintiff have several causes of action, to one of which the defense of title to real property shall be interposed, and as to *such* cause the defendant shall answer and deliver an undertaking as provided in sections 55 and 56, the justice shall discontinue the proceedings *as to that cause,* and the plaintiff may commence another action therefor in the supreme court. *As to the other causes of action, the justice may continue his proceedings."* And if he does not continue his proceedings as to such causes of action on the motion of the plaintiff, I think the plaintiff loses them. At all events, if they are proceeded with in the supreme court, I think they have no influence on the question of costs.

If, therefore, the question of costs is to be determined by the rule of the Code, I think it was rightly decided in the court below. But both of these actions are palpably actions to recover damages for trespasses on lands, and in regard to that class of actions it is claimed that this court has decided, after an examination of the statutes, that the Code does not apply to them, but the provisions of the Revised Statutes are still in force, and that by them the plaintiff recovering any sum in the supreme court is entitled to costs. (*See Allen* agt. *Gifford,* 25 *How.* 289, 301.) This conclusion was reached, it is true, with some hesitation, but not without examination. It will not be profitable, I think, to re-open the question in regard to any matters coming directly within the principle of that decision, but it will be better to leave them to be disposed of by a higher tribunal. But passing by the intrinsic difficulties of that question, there seem to me two reasons why we should not apply the principle of that case to the present:

1. The trespasses for which damages are recovered in these

actions do not come within the language or description of trespasses defined in the article of the Revised Statutes entitled "Of trespasses on lands." (2 *R. S.* 338.) That statute gives treble damages against any person who shall *cut down* or *carry off* any *wood* or *timber*, or *girdle* or *despoil* trees on the land of another, *without leave of the owner.* The trespasses referred to are *willful* trespasses, because in the next section the damages are reduced to *single* damages, if committed on land which the trespasser had probable cause to believe his own; and they are repeatedly spoken of in the cases as trespasses *under the statute.* Now, although the trespasses complained of in the cases at bar, in addition to injuries done by cattle, include also acts of cutting down, carrying away and destroying trees, wood and timber, and so might perhaps be plausibly claimed to come under the statute, yet the trespasses for which damages are actually awarded by the court are only in the Jacob's case, as follows: "And that the defendant's cattle have committed trespasses thereon to the amount of five dollars;" and in the Salisbury case, "and that the defendant's cattle have committed trespasses thereon to the amount of six cents." They do not, therefore, seem to be embraced in that description of trespasses referred to in the statute.

2. Inasmuch as section 61 of the Code has defined the cases in which, upon the interposition of a plea of title, the parties shall respectively be entitled to costs, I think the special provision thus made for that class of cases (in which the present are included) must be deemed to override any general conclusions derived from any consideration of the statute concerning "trespasses on lands." This seems also to accord with the course of decision. Section 61 gives costs to the plaintiff, if he shall recover *judgment* in the supreme court; that is, as I understand it, judgment in that branch of the action elevated to the supreme court by the plea of title; and gives costs to the defendant, in the event of his success, when the judge shall certify that the title to

real property came in question on the trial.

This certificate having been given, and the defendant having succeeded upon that issue, I think that the judge at the circuit rightfully decided that the defendants were entitled to costs.

The result is that the judgments in these cases must be *affirmed.*